UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-cv-20318-DPG

NATE M. LANDIS, individually,

      Plaintiff,

v.

QUANTUM CAPITAL GLOBAL,
LLC; QUANTUM BOTS; ADAM
LOPORTO, individually; and DAVID
WILLIAM JOSEPH, individually.

      Defendants.

_____/

## ORDER

    **THIS CAUSE** comes before the Court upon Defendants' Motion to Dismiss the Plaintiff's Amended Complaint (the "Motion"). [ECF No. 20]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons that follow, the Motion is granted in part and denied in part.

### I.    BACKGROUND[1]

    In this action, Plaintiff Nate M. Landis ("Landis") alleges that Quantum Capital Global, LLC ("Quantum Capital"), Quantum Bots, Adam LoPorto ("LoPorto"), and David William Joseph ("Joseph") (collectively, the "Defendants")[2] made fraudulent misrepresentations about their

---

[1] As the Court is proceeding on a Motion to Dismiss, it takes Plaintiff's allegations in the Amended Complaint as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

[2] LoPorto is the co-Founder of Quantum Capital, and Joseph is a sales representative for Quantum Bots. Quantum Bots is a software subsidiary to Quantum Capital. Quantum Bots and Quantum Capital shall collectively referred to as "Quantum."

investment returns and trading software. Based on those misrepresentations, Landis lost $115,215.73 in a worthless investment opportunity. [ECF No. 16].

On May 30, 2024, Landis purchased a license to use Quantum's trading software. Landis decided to purchase the license after watching Quantum Bots' ads, by LoPorto, that promoted their trading software by claiming it has "16.5%-18% historical returns" with a "2% drawdown" through a "low stress" and a "hands free" experience, and other similar ads. [ECF No. 16 ¶ 11]. Defendants also had an advertisement that claimed, "[a]nd if you're not profitable we'll give you a full refund. No questions asked." *Id.* ¶ 12. Joseph, a sales representative for Quantum Bots, told Landis to verify Quantum's trading software by reviewing feedback on Trust Pilot, an independent website providing customer reviews, which Landis did. After Landis purchased the license, he discovered that Quantum Bots offered customers financial incentives to leave 5-star and positive reviews on Trust Pilot's website. Additionally, customers, including Landis, were asked to remove 1-star Trust Pilot reviews as a condition of receiving a refund.

Joseph was Landis's primary contact on his purchase of the trading software license and on the appropriate settings for his use of the trading software. Through video conversations, phone calls, and text messages, Joseph gave Landis direct advice on product settings and told Landis that his initial account settings were "perfect and will work well." [ECF No. 16 ¶¶ 26, 27]. Joseph later assured Landis by telling him that "[w]e've never had an account blow up. Cause all we do is win. Over time of course." *Id.* ¶ 27.

Although the Broker Selection section of the Licensing Agreement states that Quantum does not make broker recommendations, on May 28, 2024, Joseph sent Landis, in bold, a list of brokerages commonly used with Ox Securities. *Id.* ¶ 29. On June 3, 2024, Joseph confirmed to Landis that execution of other customers using Ox Securities "has been solid." *Id.* ¶ 30. However,

on August 1, 2024, Landis received an email from Quantum stating that Ox Securities is not an advised broker and that Quantum had decided not to continue with them. *Id*. ¶ 32. Additionally, Landis learned that Joseph's representation on his LinkedIn profile that he is a member of the National Futures Association, a self-regulatory organization in the derivatives industry, is false. In the few months since Landis signed the licensing agreement, his account dropped from $200,000 to approximately $85,000, and Joseph stopped responding to Landis' repeated attempts at communication.

On December 10, 2024, Landis filed a Complaint in Florida's Eleventh Judicial Circuit against Defendants. On January 21, 2025, Quantum Capital filed a Notice of Removal to this Court on the basis of diversity jurisdiction. [ECF No. 1]. On February 24, 2025, Landis filed an Amended Complaint against the Defendants, alleging fraudulent misrepresentation (Count I), breach of fiduciary duty (Count II), unjust enrichment (Count III), fraud (Count IV), civil theft (Count V), violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA") (Count VI), and violation of Florida Statute § 817.41 (Count VII). [ECF No. 16]. Defendants filed the instant Motion to Dismiss [ECF No. 20]; Landis filed a response in opposition [ECF No. 41]; and Defendants filed a Reply [ECF No. 42].

## II.   STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are

not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). "[T]he pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff. *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). On a motion to dismiss, the court need not determine whether the plaintiff "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

### III.    DISCUSSION

#### A.    Fraud and Fraudulent Misrepresentation

Defendants argue that Landis' allegations of fraud and fraudulent misrepresentation fail to meet the elements of those claims and the heightened Federal Rule of Civil Procedure 9(b) pleading standards. "A plaintiff must allege four elements to establish a fraud or a fraudulent misrepresentation claim: '(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in *reliance* on the representation.'" *Hercules Capital, Inc. v. Gittleman*, 2018 WL 395489, at *21 (S.D. Fla. January 12, 2018) (citing *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)). Moreover, allegations of fraud must comply with Rule 9(b)'s heightened pleading requirements, and must therefore allege "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a

consequence of the fraud." *U.S. ex rel. Clausen v. Lab Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (citation omitted).

Here, the Court is satisfied that Landis plausibly alleges claims for fraud and fraudulent misrepresentation. He alleges several instances when Defendants made false representations and the substance of those misrepresentations. For example, Landis alleges that Defendants' advertisement claimed "[a]nd if you're not profitable we'll give you a full refund. No questions asked." However, Defendants conditioned Landis' refund on his removal of a one-star review. [ECF No. 16 ¶ 19]. Landis alleges sufficient detail on when the advertisement was shown and when he signed the license agreement with Defendants. Landis also alleges that Joseph lied on his LinkedIn profile about his qualifications.

Defendants' argument that customer reviews are not written by Defendants and so cannot be fraudulent is also unavailing. Under Florida law, "fraud can occur by omission." *Woods v. On Baldwin Pond, LLC*, 634 F. App'x 296, 297 (11th Cir. 2015) (citing *ZC Ins. Co. v. Brooks,* 847 So. 2d 547, 551 (Fla. 4th DCA 2003)). Landis alleges that Joseph made fraudulent statements when he told him to verify Quantum's trading software by reviewing feedback on Trust Pilot even though Quantum offers financial incentives to leave positive reviews. Landis further alleges that Defendants failed to disclose those financial incentives. As Plaintiff has plausibly alleged claims for fraud and fraudulent misrepresentation against all Defendants, the Motion is denied as to Counts I and IV.

### B.      Breach of Fiduciary Duty

Defendants also move to dismiss Landis' breach of fiduciary duty claim, in which Landis alleges that Defendants owed him a fiduciary duty to provide accurate investment information and to help him monetize his investment. To state a claim for breach of fiduciary duty, a plaintiff must

plausibly allege "(1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages proximately caused by the breach." *Silver v. Countrywide Home Loans, Inc*., 760 F. Supp. 2d 1330, 1338 (S.D. Fla. 2011) (citing *Gracey v. Eaker*, 837 So. 2d 348 (Fla. 2002)). "Under Florida law, a fiduciary relationship exists where confidence is reposed by one party and a trust accepted by the other." *Id.* (citing *Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002)). A fiduciary relationship is formed either "through the terms of an express agreement" or implied by law. *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 540 (Fla. 5th DCA 2003).

Landis does not allege the existence of an express agreement through which Defendants agreed to a fiduciary relationship with him.[3] To establish an implied relationship, Landis "must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Watkins v. NCNB Nat'l Bank of Fla., N.A.*, 622 So. 2d 1063, 1065 (Fla. 3d DCA 1993). That said, "[w]hen the parties are dealing at arm's length, a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other." *Taylor Woodrow Homes*, 850 So. 2d at 541.

The transaction between Landis and Defendants was an arms-length transaction. "[O]ne may not unilaterally impose a fiduciary responsibility on another simply by reposing trust; absent some conscious acceptance of such duties, no fiduciary relationship is created." *Silver*, 760 F. Supp. 2d at 1339. The fact that Landis trusted Defendants, specifically Joseph, to give him advice on the software's settings and how to select a broker does not mean that Defendants agreed to have a fiduciary relationship with him. Even though Landis had multiple communications with Joseph, the Licensing Agreement states that Quantum Capital and Quantum Bots "offer[] the Products on

---

[3] Landis does not allege the Licensing Agreement expressly established a fiduciary relationship [ECF No. 16 ¶¶ 48–52]; and in his response to the Motion to Dismiss, he argues "[t]his is exactly why Florida law correctly recognizes a cause of action for breach of an implied fiduciary relationship." [ECF No. 41 at 7]. Even if Landis alleged an express agreement, the Licensing Agreement would not be sufficient to establish a fiduciary duty between the parties.

an 'as is' basis with no warranties, either express or implied" and "disclaim any and all warranties, express or implied." [ECF No. 16-1 at 2]. The Licensing Agreement also makes clear that neither Defendants, nor their employees or agents, "is a registered Broker/Dealer or Investment Advisor" and that customers "are encouraged to consult with a licensed representative of their choice regarding any particular trade or trading strategy." *Id.* at 4. Based on the allegations in the Amended Complaint, the Court cannot find that Defendants consciously accepted any fiduciary duties for Landis. Accordingly, Landis' breach of fiduciary duty claim fails and Defendants' Motion is granted as to Count II.

### C.      Unjust Enrichment

In the Amended Complaint, Landis alleges Defendants intentionally "misled [him] to invest in business that was not going to generate the guaranteed revenues" and that those misrepresentations "conferred a benefit" on Defendants. [ECF No. 16 ¶¶ 54-55]. Defendants move to dismiss this unjust enrichment claim, arguing Landis has not alleged the elements of that claim.

To state a claim for unjust enrichment under Florida law, a plaintiff must allege: "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Hillman Construction Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. 4th DCA 1994). While pleadings at the motion to dismiss stage are "are construed broadly," *Levine,* 437 F.3d at 1120, the standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "[C]onclusory allegations, with no factual

support, are insufficient to state a claim." *Hansel v. All Gone Towing Co.*, 132 F. App'x 308, 310 (11th Cir. 2005).

The Court agrees with Defendants that Landis has not adequately alleged this claim. In Count III, Landis alleges that "[Defendants'] misrepresentations to [Landis] conferred a benefit upon them for which they have knowingly and voluntarily accepted and retained" and that it would be inequitable for them "to retain the benefit of the subject investment revenue without compensating [Landis]." [ECF No. 16 ¶¶ 55, 56]. Importantly, Landis does not identify the "benefit" he conferred on Defendants or why it would be inequitable for them to retain that benefit. Therefore, Plaintiff has failed to adequately state a claim for unjust enrichment and Defendants' Motion is granted as to Count III.

### D.    Civil Theft

Defendants argue Landis' civil theft claim should be dismissed because he does not adequately allege the elements of that claim. "To prevail on an action for civil theft, the plaintiff must prove that the defendant (1) knowingly; (2) obtained or used, or endeavored to obtain or use, the plaintiff's property; (3) with felonious intent; (4) to deprive the plaintiff of its right to or a benefit from the property or appropriate the property to the defendant's own use or to the use of a person not entitled to use the property." *Howard v. Murray*, 184 So. 3d 1155, 1167 n.24 (Fla. 1st DCA 2015). Here, Landis alleges that, through fraud, Defendants knowingly obtained and misappropriated approximately $115,215.73 of his money for Defendants' own use. Landis also alleges that he sent a demand for return of the money to the Defendants, which they ignored. [ECF No. 16 ¶¶ 64-65]. At this stage, the Court finds these allegations sufficient to state a claim for civil theft. Therefore, the Motion is denied as to Count V.

### E.      FDUPTA

Defendants move to dismiss Landis' FDUPTA claim, arguing that he fails to adequately allege the elements of the claim.[4] To state a claim under FDUTPA, Landis must allege "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Marrache v. Bacardi, U.S.A.*, 17 F.4th 1084, 1087 (11th Cir. 2021) (quoting *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985-86 (11th Cir. 2016)). Here, Landis adequately alleges that Defendants' misrepresentations led him to purchase Defendants' trading software, through which Landis lost most of his investment.[5] As such, the Motion is denied as to Count VI.

### F.      Florida Statute § 817.41

Finally, Landis alleges that Defendants violated Florida Statute § 817.41 based on misleading advertising. To bring a claim for misleading advertising under § 817.41, a plaintiff must allege: "(1) misrepresentation of a material fact; (2) that the representor made the misrepresentation without knowledge as to its truth or falsity or under circumstances in which he ought to have known of its falsity; (3) that the representor intended that the misrepresentation induce another to act on it; and (4) that injury resulted to the party acting in justifiable reliance on the misrepresentation." *Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1352–53 (S.D. Fla. 2016) (quoting *Holguin v. Celebrity Cruises, Inc.*, No. 10-CIV-20212, 2010 WL 1837808, at *1 (S.D. Fla. May 4, 2010)). Considering the Amended Complaint's allegations as a whole, the Court finds that Landis adequately states a claim for Defendants' violation of § 817.41. *See* [ECF No. 16 ¶¶ 11 – 36, 83]. Therefore,  Defendants' Motion is denied as to Count VII.

---

[4] Defendants' other argument, that FDUPTA doesn't apply as the alleged deceptive practices did not take place in Florida, is unavailing. Plaintiff alleges the alleged deceptive practices took place in Florida, [ECF No. 16 ¶ 70], and the forum selection clause of the agreement states the governing law is Florida. [ECF No. 16-1 at 6].
[5] Defendants do not specify whether they move to dismiss this claim under 9(b)'s heightened pleading standards, but the Court finds this Count is adequately alleged even under 9(b)'s pleading standard, as discussed in Counts I, IV.

IV.     **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.      The Defendants' Motion to Dismiss Plaintiff's Amended Complaint, [ECF No. 20],

is **GRANTED** as to Counts II and III, and **DENIED** as to Counts I, IV, V, VI, and VII.

2.      Counts II and III are **dismissed** without prejudice.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 4th day of November, 2025.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE